CICCORP., INC., Plaintiff,

v.

AIMTECH CORPORATION and Glenn S. Collins, III, Defendants.

No. CIV. A. H–97–4013.

United States District Court, S.D. Texas, Houston Division.

Sept. 8, 1998.

Michael S. Wilk, Hirsch & Westheimer PC, Douglas H. Elliott, Tobor & Goldstein, Eric Scott Lipper, Hirsch & Westheimer, Houston, TX, Gregory P. Parsons, Stites & Harbison, Lexington, KY, for Plaintiff.

William Edward Matthews, James G. Munisteri, Jackson W. Moore, Craig Ledet, Gardere Wynne Sewell & Riggs, L.L.P., Houston, TX, Billy Payne, Payne Watson Kling Miller & Malechek, P.C., Bryan, TX, for Defendants.

## MEMORANDUM AND ORDER

LAKE, District Judge.

Pending before the court are Collins's Motion for Summary Judgment (Docket Entry No. 38), Collins's Motion to Dismiss for Lack of Jurisdiction (Docket Entry No. 40), and NeoDyme's Motion for Summary Judgment (Docket Entry No. 42).

## I. BACKGROUND

CICCorp., Inc. (CIC) develops and markets software used for the maintenance of hospital equipment. Glenn S. Collins, III (Collins) and David Hickson (Hickson) each owned fifty percent of the company. In June of 1997, Collins and Hickson had a serious falling out, prompting Hickson to obtain a temporary restraining order effectively barring both men from managing CIC. The two men eventually settled the lawsuit through mediation.

In the settlement agreement Collins and Hickson agreed to bid for the other's fifty percent interest in CIC. The high bidder would buy complete control of the company; the losing bidder, though forced to sell his entire interest in the company, retained the right to compete freely against CIC, to use certain CIC confidential information, and to use, under a licensing agreement, certain software developed by CIC. Hickson submitted the high bid, $25 million, at the October 20, 1997, auction and the sale closed on October 29, 1997.

After Collins learned that Hickson had submitted the high bid Collins began forming a new company, AIMTech Corporation (AIMTech), to compete against CIC. AIMTech did business under the name AIM Technologies and called its services "AIM[2]" and "MMS[2]." Collins recruited employees at CIC to work for him at AIMTech and began aggressively pursuing CIC customers.

On November 10, 1997, CIC sued Collins and others in Brazos County state court, alleging conversion of CIC property. On December 9, 1997, CIC filed a separate complaint in this court against Collins and AIMTech. CIC's complaint alleges four claims against AIMTech:

(1) service mark infringement under 15 U.S.C. § 1125(a),

(2) trade dress infringement under 15 U.S.C. § 1125(a),

(3) false advertising under 15 U.S.C. § 1125(a), and

(4) common-law service market infringement and unfair competition.

The complaint further alleges three claims under Texas common law against Collins:

(1) breach of contract,

(2) breach of fiduciary duty, and

(3) diversion of corporate opportunity.

The complaint also includes a cause of action for common-law conversion against both Collins and AIMTech. CIC seeks injunctive relief against both AIMTech and Collins, restitution and treble damages for service mark and trade dress infringement, actual and punitive damages on the remaining claims, and attorney's fees.

On December 19, 1997, ten days after CIC filed this action, AIMTech changed its name to NeoDyme Technologies Corporation (NeoDyme)[1] and changed its service names from AIM[2] and MMS[2] to "MediDyme" and "MediDyme Select." NeoDyme announced these changes in open court on December 22, 1997, and in a press release on January 5, 1998.[2] CIC contends that NeoDyme did not discontinue using its former business and product names until January 6, 1998.[3]

On April 17, 1998, Collins filed motions for summary judgment and to dismiss. NeoDyme filed a motion for summary judgment three days later on April 20, 1998. CIC has responded to all three motions, and Collins and NeoDyme have filed replies to each response. In response to the court's invitation at a hearing on July 9, 1998, Collins and NeoDyme both filed amended answers and counterclaims and CIC filed a supplemental response to Collins's motion to dismiss, which prompted a supplemental reply by Collins. Because Collins's motion to dismiss raises questions as to the court's subject matter jurisdiction, the court will address it first.

---

1. Hereinafter, the court will refer to AIMTech as NeoDyme.

2. January 5, 1998, News Release, I Exhibits to NeoDyme's Motion for Summary Judgment [Docket Entry No. 43], Ex. 6.

3. CIC's Response in Opposition to NeoDyme's Motion for Summary Judgment [Docket Entry No. 68] at 1.

## II. COLLINS'S MOTION TO DISMISS FOR LACK OF JURISDICTION

CIC brings four claims against Collins, all arising out of Texas common law:

(1) breach of contract,

(2) breach of fiduciary duty,

(3) diversion of corporate opportunity, and

(4) conversion.

Collins argues that the court lacks subject matter jurisdiction over CIC's common law claims and moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(1). Alternatively, Collins contends that if the court can hear these claims, it should exercise its discretion to decline to do so.

■ CIC argues that the court has supplemental jurisdiction under 28 U.S.C. § 1367(a), which states:

Except as provided in subsection (b) and (c)[4] or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

The court has original jurisdiction over CIC's Lanham Act and common-law unfair competition claims against NeoDyme pursuant to 15 U.S.C. § 1121(a) (granting original jurisdiction in all actions arising under the Lanham Act), 28 U.S.C. § 1331 (providing for general federal question jurisdiction), and 28 U.S.C. § 1338(b) (granting original jurisdiction over common-law unfair competition claims joined to substantial, related claims brought under the federal trademark laws). The issue is whether CIC's state-law claims against Collins form part of the same case or controversy as CIC's Lanham Act claims against NeoDyme.[5]

■ Section 1367 grants district courts supplemental jurisdiction to the limits allowed by Article III of the Constitution. See, e.g., In re Walker, 51 F.3d 562, 571 (5th Cir.1995); 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3567.3, at 59–60 (2d ed. Supp.1998). In United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court defined this boundary by holding that federal courts have pendent jurisdiction (now known as supplemental jurisdiction) whenever the relationship between a cognizable federal claim and a state-law claim "permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" 86 S.Ct. at 1138. The Court explained how to determine whether a district court has pendent jurisdiction:

The federal claim must have substance to confer subject matter jurisdiction on the court.... The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming

4. Subsection (b) applies to civil actions founded solely on diversity of citizenship. See 28 U.S.C. § 1367(b). Subsection (b) does not apply here because the court's original jurisdiction is not premised upon diversity, but upon federal questions.

Subsection (c) codifies the rules under which a court may, in its discretion, decline to exercise supplemental jurisdiction. See id. § 1367(c).

5. Under the old concept of pendent jurisdiction, this circumstance would be called pendent-party jurisdiction because the plaintiff, CIC, asks the court to exercise subject matter jurisdiction over a party "not named in any claim that is independently cognizable by the federal court." Finley v. United States, 490 U.S. 545, 109 S.Ct. 2003, 2006–07, 104 L.Ed.2d 593 (1989). Section 1367(a) incorporates pendent-party jurisdiction into the concept of supplemental jurisdiction and allows federal courts to exercise jurisdiction in federal-question cases as long as the claims against the pendent parties and the federal claims form the same case or controversy. See Rodriguez v. Pacificare of Texas, Inc., 980 F.2d 1014, 1018 (5th Cir.1993); 13B Charles Alan Wright, et al., Federal Practice and Procedure §. 3567.2, at 50 (2d ed. Supp.1998).

substantiality of the federal issues, there is *power* in federal courts to hear the whole.

*Id.* (citations omitted; emphasis in original).

▮ State and federal claims thus form part of the same case or controversy, and trigger supplemental jurisdiction, when they derive from a common nucleus of operative fact. *See City of Chicago v. International College of Surgeons*, 522 U.S. 156, 118 S.Ct. 523, 530, 139 L.Ed.2d 525 (1997). In order for this court to have subject matter jurisdiction over CIC's claims against Collins those claims must therefore derive the same nucleus of operative fact as CIC's Lanham Act claims against NeoDyme.

▮ CIC's claims against Collins do not share such a relationship with its federal claims against NeoDyme. As explained in greater detail below,[6] any liability for infringement under the Lanham Act depends on the protectability of CIC's service marks and trade dress and the likelihood of confusion caused by NeoDyme's service marks and trade dress. Protectability turns on the relative distinctiveness of CIC's service marks and trade dress, while the likelihood of confusion depends on a balance of factors focusing on the services, service marks, trade dress, customers, and modes of advertising used by the parties. A defendant's intent to derive benefit from the plaintiff's service marks and trade dress is relevant, but not dispositive or essential, to a determination of a likelihood of confusion. *See Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 258 (5th Cir.1997), *cert. denied*, — U.S. —, 118 S.Ct. 1795, 140 L.Ed.2d 936 (1998); *Blue Bell Bio–Med. v. Cin–Bad, Inc.*, 864 F.2d 1253, 1259 (5th Cir.1989). Any liability for false advertising depends on a showing that:

6. *See infra* Part III(B).

7. *See infra* Part III(C).

8. Plaintiff's Response to Collins' Motion to Dismiss [Docket Entry No. 51] ¶ 14, at 8.

9. While CIC essentially claims that Collins and NeoDyme stole the rights to CIC's "takeaim.com" internet webpage address, CIC cannot recover for conversion for such conduct. Under Texas common law conversion requires the wrongful dominion and control over anoth-

(1) NeoDyme made a false or misleading statement as to its own or CIC's services,

(2) there was actual deception or a tendency to deceive,

(3) the misrepresentation was material, and

(4) CIC was likely to suffer economic injury.[7]

The operative facts supporting CIC's federal claims thus focus on the conduct of NeoDyme in marketing its services, conduct that occurred after Collins sold his stake in CIC, left the company, and established AIMTech (now NeoDyme).

▮ CIC's claims against Collins, however, focus on his conduct during the split and in forming AIMTech. CIC alleges that Collins breached the purchase agreement "by not maintaining [the] regular and ordinary business of CIC [and] by taking documents, property, and employees."[8] Collins's allegedly covert machinations in appropriating CIC property and employees for NeoDyme, his alleged breach of fiduciary duty to CIC while still a director, and his alleged failure to perform under the purchase agreement do not establish a case for unfair competition, false advertising, or infringement under the Lanham Act. Similarly, the allegedly false, material misrepresentations in NeoDyme's proposals and NeoDyme's alleged use of infringing service marks and trade dress do not establish a case for breach of contract, breach of fiduciary duty, diversion of corporate opportunity, or conversion.[9]

CIC argues that its federal claims against NeoDyme and its state claims against Collins form part of the same case because they evolve from Collins's alleged scheme to destroy CIC and arise from the same transaction-the sale of CIC to Hickson.[10] The court

er's *personal* property. *See Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, 651 (5th Cir.1991). CIC has not identified any authority extending liability for conversion to alleged unlawful dominion and control over *intangible* property such as an internet webpage address.

10. Plaintiff's Response to Collins' Motion to Dismiss [Docket Entry No. 51] ¶ 27, at 13.

is not persuaded by this argument because Collins's alleged malevolent motive is too insubstantial an operative fact to form a common nucleus in this case. Commonality of insubstantial facts is not sufficient. *See Mason v. Richmond Motor Co.*, 625 F.Supp. 883, 887 (E.D.Va.1986), *aff'd*, 825 F.2d 407 (4th Cir.1987).

Next, CIC argues that the same evidence applies to all the claims because the materials NeoDyme used in violation of the Lanham Act are the same materials Collins obtained in violation of the purchase agreement.[11] Although some evidence may relate to each claim, not all of it will. For example, CIC has not explained how evidence regarding actual confusion of consumers or the relative strength of the respective service marks and trade dress will apply to the state-law claims. In another manifestation of this argument, CIC contends that NeoDyme and Collins got a head start in their marketing to potential customers by using CIC's service marks, trade dress, and confidential customer data, which Collins allegedly took surreptitiously and unlawfully from CIC. According to CIC, NeoDyme could not have submitted proposals to customers as quickly after its formation as it did had Collins not breached his contractual and fiduciary duties, diverted corporate opportunities while still at CIC, and converted CIC property, and had NeoDyme not used infringing service marks and trade dress.[12]

The court is not persuaded by CIC's arguments. CIC fails to explain how this allegedly common effect-a head start-constitutes an operative fact, especially when CIC has offered no evidence that it somehow was prevented from marketing to customers during this period. What CIC describes is, in effect, a molecule of facts, not an atom: a combination of state-law and federal-law claims orbiting around different nuclei of facts. Just as atoms of sodium and chlorine combine to create a substance, sodium chloride (table salt), with different properties than its constituent elements, CIC attempts to bond two distinct cases into one legal molecule. The result is a lawsuit attacking the defendants' quick start, which is not in itself unlawful, that is composed of two distinct nuclei of operative facts showing allegedly unlawful conduct. But the operative facts that give rise to CIC's Lanham Act claims are not the facts that operate to give rise to CIC's state-law claims against Collins. *See Mason*, 625 F.Supp. at 887. This scenario does not yield supplemental jurisdiction.

Finally, CIC argues that at least part of the measure of damages will be the same for all of its state and federal claims. CIC seeks compensation for the loss of its goodwill and reputation and argues that it can recover for these losses in contract and under the Lanham Act. According to CIC, because it will use the same evidence to establish the fact and value of lost goodwill in all of its claims, the state and federal claims have a common nucleus of operative fact. CIC has provided scant authority on the issue of recovery of lost goodwill for breach of contract, and the court is not otherwise aware of any authority for such a theory. Indeed, the only case CIC cites on this issue simply states that goodwill is a part of the value of a business; the case does not hold, as CIC suggests, that a plaintiff may recover for loss of goodwill in a breach of contract action. *See Airflow Houston, Inc. v. Theriot*, 849 S.W.2d 928, 933 (Tex.App.-Houston [1st Dist.] 1993, no writ).

11. CIC's Supplemental Response to Collins' Motion to Dismiss [Docket Entry No. 108] at 1–2.

12. In support of this argument CIC included a chart listing several facts and how they relate to the federal claims and to the state claims. (CIC's Supplemental Response to Collins' Motion to Dismiss [Docket Entry No. 108] at 2–3). Instead of demonstrating a common nucleus, the chart emphasizes the disparate factual bases for the federal and state claims. Most of the facts listed in the chart have no legal relevance to CIC's federal claims; the remainder relate only to NeoDyme's intent. Contrary to CIC's assumptions in the chart, neither intent to copy nor intent to "do all things necessary to help Collins" are necessarily relevant to a Lanham Act claim. The type of intent at issue in infringement is the intent to derive benefit from a competitor's service marks or trade dress. (If any intent is relevant to a false advertising claim, it is intent to deceive.) Intent is but one of numerous factors in the likelihood of confusion analysis. Indeed, a factfinder can find infringement even without any evidence of intent at all. *See Sunbeam Prods., Inc.*, 123 F.3d at 258.

The court concludes that CIC's pendant-party claims against Collins for breach of contract, breach of fiduciary duty, diversion of corporate opportunity, and conversion do not share a common nucleus of operative fact with CIC's claims against NeoDyme for infringement and false advertising under the Lanham Act. Because the court lacks authority to exercise supplemental jurisdiction over CIC's claims against Collins, the court will grant Collins's motion to dismiss for lack of subject matter jurisdiction.

## III. NEODYME'S MOTION FOR SUMMARY JUDGMENT

CIC brings five claims under the Lanham Act and Texas common law against Neo-Dyme:

(1) service mark infringement under the Lanham Act,

(2) trade dress infringement under the Lanham Act,

(3) false advertising under the Lanham Act,

(4) common-law service mark infringement and unfair competition, and

(5) common-law conversion.

These five claims fall into three basic categories:

(a) service mark and trade dress infringement,

(b) false advertising, and

(c) conversion.

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure governs the propriety of summary judgment. Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir.1996); *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see Gunaca v. Texas,* 65 F.3d 467, 469 (5th Cir.1995).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*) (quoting *Celotex,* 106 S.Ct. at 2553, 106 S.Ct. 2548). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Rizzo v. Children's World Learning Ctrs., Inc.,* 84 F.3d 758, 762 (5th Cir.1996) (citing *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992)). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little,* 37 F.3d at 1075.

If, however, the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments Inc.,* 100 F.3d 1173, 1180 (5th Cir.1996); *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1046–47 (5th Cir.1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1075.

Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace,* 80 F.3d at 1047; *accord, S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir.1996). The court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum*

*Highlands, Ltd. v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.), *as modified,* 70 F.3d 26 (5th Cir.1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Texas Instruments Inc.,* 100 F.3d at 1179.

When affidavits are used to support or oppose a motion for summary judgment they "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e); *Beijing Metals & Minerals Import/Export Corp. v. American Bus., Ctr., Inc.,* 993 F.2d 1178, 1182 (5th Cir.1993). Affidavits that are not based on personal knowledge or that are based merely on information and belief do not satisfy the requirements of Rule 56(e), and those portions of an affidavit that do not comply with Rule 56(e) are not entitled to any weight and cannot be considered in deciding a motion for summary judgment. *Richardson v. Oldham,* 12 F.3d 1373, 1378–79 (5th Cir.1994). Neither shall conclusory affidavits suffice to create or negate a genuine issue of fact. *McCallum Highlands, Ltd.,* 66 F.3d at 92; *Travelers Ins. Co. v. Liljeberg Enters., Inc.,* 7 F.3d 1203, 1207 (5th Cir.1993); *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir.1992).

**B. Service Mark and Trade Dress Infringement**

CIC alleges that NeoDyme infringed on the following four unregistered service marks:

(1) AIM[SM],

(2) takeAIM[SM],

(3) Asset Internet Management[SM], and

(4) MMS[SM].[13]

CIC also contends that NeoDyme infringed CIC's trade dress by using an allegedly similar color scheme, format, and layout for service proposal materials that NeoDyme distributed to potential customers. NeoDyme seeks summary judgment, arguing that:

(1) confusion is "improbable," [14]

(2) CIC abandoned its service marks,

(3) its conduct falls under the fair-use doctrine,

(4) the need for any injunctive relief is now moot, and

(5) CIC is not entitled to any monetary relief.

CIC bases its infringement claims on § 43(a)(1) of the Lanham Act, which applies to unregistered service marks and trade dress and provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

This statute creates a cause of action for infringement of trademarks, service

---

13. Complaint ¶ 17, at 8.

14. While NeoDyme correctly states that one of the central issues in infringement cases is the likelihood of confusion (NeoDyme's Motion for Summary Judgment [Docket Entry No. 42] at 8), it consistently argues that the court should grant summary judgment because confusion was *improbable.* While the phrase "probability of con-

fusion" might very well be legally synonymous with "likelihood of confusion," the court will confine its analysis to the nomenclature of the Fifth Circuit, which consistently orders its analysis around the question of *likelihood* of confusion. *See, e.g., Elvis Presley Enters., Inc. v. Capece,* 141 F.3d 188 (5th Cir.1998); *Roto–Rooter Corp. v. O'Neal,* 513 F.2d 44 (5th Cir.1975).

marks, and trade dress. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 112 S.Ct. 2753, 2760, 120 L.Ed.2d 615 (1992); *Peaches Entertainment Corp. v. Entertainment Repertoire Assocs., Inc.,* 62 F.3d 690, 692 (5th Cir.1995). The same basic analytical framework applies to any infringement claim under § 43(a). *See Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,* 549 F.2d 368, 386, 373 n. 3 (5th Cir.1977). This framework also applies to common-law infringement claims. *See Marathon Mfg. Co. v. Enerlite Prods. Corp.,* 767 F.2d 214, 217 (5th Cir. 1985) (*per curiam*); *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 706 (5th Cir. Unit A Oct.1981); *Sun Banks, Inc. v. Sun Fed. Savings & Loan Ass'n,* 651 F.2d 311, 319 (5th Cir.1981); *Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1190–91 (5th Cir.1980); *Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004, 1010 (5th Cir.1975).

■ To recover on a claim of service mark or trade dress infringement CIC must first show that its service marks and trade dress are legally protectable. If CIC successfully shows protectability, it must then establish infringement by showing that there is a likelihood of confusion between its service marks and trade dress and those of NeoDyme. *See Engineering Dynamics, Inc. v. Structural Software, Inc.,* 26 F.3d 1335, 1350 (5th Cir. 1994), *supplemented by* 46 F.3d 408 (5th Cir.1995); *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.,* 932 F.2d 1113, 1117–18 (5th Cir. 1991), *aff'd,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.,* 878 F.2d 806, 813–14 (5th Cir.1989); *Sno-Wizard Mfg., Inc. v. Eisemann Prods. Co.,* 791 F.2d 423, 425 (5th Cir.1986); *Security Ctr., Ltd. v. First Nat'l Sec. Ctrs.,* 750 F.2d 1295, 1298 (5th Cir.1985); *Sicilia Di R. Biebow & Co. v. Cox,* 732 F.2d 417, 425 (5th Cir.1984). The plaintiff has the burden of proof on both of these issues. *See Sun Banks, Inc.,* 651 F.2d at 315.

■ To determine protectability the court must examine three issues:

(1) functionality of the trade dress (only as to trade dress infringement claims),

(2) distinctiveness of the service mark or trade dress, and

(3) secondary meaning.

*See Engineering Dynamics, Inc.,* 26 F.3d at 1350; *Taco Cabana Int'l, Inc.,* 932 F.2d at 1117–18; *Allied Mktg. Group, Inc.,* 878 F.2d at 813; *Sno-Wizard Mfg., Inc.,* 791 F.2d at 425.

■ NeoDyme does not challenge the protectability of CIC's service marks and trade dress; instead, NeoDyme focuses on the likelihood of confusion. Under this inquiry CIC must show that NeoDyme's service marks and trade dress were likely to produce confusion in customers' minds as to the source, affiliation, or sponsorship of Neo-Dyme's services. *See Elvis Presley Enters., Inc. v. Capece,* 141 F.3d 188, 193 (5th Cir. 1998); *Society of Fin. Exam'rs v. National Ass'n of Certified Fraud Exam'rs Inc.,* 41 F.3d 223, 227 (5th Cir.1995); *Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 149 (5th Cir.1985); *Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.,* 725 F.2d 336, 343 (5th Cir.1984); *see also Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591, 596 (5th Cir.1985). Likelihood of confusion is a function of seven factors, known in the Fifth Circuit as the digits of confusion:

(1) the similarity between the parties' products or services,

(2) the strength of the plaintiff's service mark or trade dress,

(3) the similarity between the parties' service marks or trade dress,

(4) the identity of the advertising media used,

(5) the defendant's intent,

(6) the identity of customers and retail outlets, and

(7) evidence of actual confusion.

*See Elvis Presley Enters., Inc.,* 141 F.3d at 194; *Sunbeam Prods., Inc. v. West Bend Co.,* 123 F.3d 246, 257 (5th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1795, 140 L.Ed.2d 936 (1998); *Society of Fin. Exam'rs,* 41 F.3d at 228 n. 10; *Taco Cabana Int'l, Inc.,* 932 F.2d at 1122 n. 9; *Allied Mktg. Group, Inc.,* 878 F.2d at 813; *Blue Bell Bio-Med. v.*

*Cin–Bad, Inc.,* 864 F.2d 1253, 1260 (5th Cir. 1989); *Oreck Corp. v. U.S. Floor Sys., Inc.,* 803 F.2d 166, 170 (5th Cir.1986); *Sno–Wizard Mfg., Inc.,* 791 F.2d at 428; *Marathon Mfg. Co.,* 767 F.2d at 217; *Fuji Photo Film Co.,* 754 F.2d at 595; *Conan Properties, Inc.,* 752 F.2d at 149; *Sicilia Di R. Biebow & Co.,* 732 F.2d at 430; *Armco, Inc. v. Armco Burglar Alarm Co.,* 693 F.2d 1155, 1159 (5th Cir.1982); *Chevron Chem. Co.,* 659 F.2d at 703; *Sun–Fun Prods., Inc. v. Suntan Research & Dev. Inc.,* 656 F.2d 186, 189 (5th Cir. Unit B Sept.1981); *Sun Banks, Inc.,* 651 F.2d at 314; *Exxon Corp. v. Texas Motor Exch., Inc.,* 628 F.2d 500, 504 (5th Cir.1980); *Soweco, Inc.,* 617 F.2d at 1185; *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 259 (5th Cir.1980).

In addition to the seven digits listed above, courts have considered several additional factors in the confusion analysis, including:

(8) the degree of care exercised by typical purchasers of the product or service,[15]

(9) whether the product or service is inexpensive or likely to be purchased on impulse,[16]

(10) any previous relationship between the parties,[17]

(11) lack of present competition between the parties,[18]

(12) the likelihood that one party will expand its product line or services to compete with the other,[19]

(13) the notoriety of the plaintiff's service marks or trade dress,[20] and

(14) whether the plaintiff is a diversified company.[21]

 The factfinder must weigh the digits of confusion and any relevant additional factors to determine whether the facts balance in favor of infringement. Plaintiffs need not produce evidence on all or even a majority of the seven digits. *See Society of Fin. Exam'rs,* 41 F.3d at 228 n. 15. The weight and persuasiveness of each factor varies from case to case. *See Marathon Mfg. Co.,* 767 F.2d at 218; *Falcon Rice Mill, Inc.,* 725 F.2d at 345 n. 9. The digits need not add up to a particular sum. *See Kentucky Fried Chicken Corp.,* 549 F.2d at 385. Indeed, "[n]o one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.'" *Elvis Presley Enters., Inc.,* 141 F.3d at 194; *accord Sunbeam Prods., Inc.,* 123 F.3d at 257; *Taco Cabana Int'l, Inc.,* 932 F.2d at 1122 n. 9; *Marathon Mfg. Co.,* 767 F.2d at 218; *Conan Properties, Inc.,* 752 F.2d at 150; *Louisiana World Exposition, Inc. v. Logue,* 746 F.2d 1033, 1040 (5th Cir.1984); *Armco, Inc.,* 693 F.2d at 1159. A showing of actual consumer confusion is not required in order to establish infringement. *See Elvis Presley Enters., Inc.,* 141 F.3d at 203; *Society of Fin. Exam'rs,* 41 F.3d at 228; *Allied Mktg. Group, Inc.,* 878 F.2d at 813; *Falcon Rice Mill, Inc.,* 725 F.2d at 345; *Sun–Fun Prods., Inc.,* 656 F.2d at 191; *Exxon Corp.,* 628 F.2d at 506; *Soweco, Inc.,* 617 F.2d at 1186; *Kentucky Fried Chicken Corp.,* 549 F.2d at 386; *Roto–Rooter Corp. v. O'Neal,* 513 F.2d 44, 45–46 (5th Cir.1975). Finally, the factfinder should analyze likelihood of confusion in terms of the typical buyer of the service or product. *See Kentucky Fried Chicken Corp.,* 549 F.2d at 389 n. 6.

 The likelihood of confusion analysis is inescapably factual in nature. The factfin-

---

15. *See Sunbeam Prods., Inc.,* 123 F.3d at 257; *Allied Mktg. Group, Inc.,* 878 F.2d at 813; *Oreck Corp.,* 803 F.2d at 170; *Sno–Wizard Mfg., Inc.,* 791 F.2d at 428; *Falcon Rice Mill, Inc.,* 725 F.2d at 345; *Armco, Inc.,* 693 F.2d at 1160–61; *Sun–Fun Prods., Inc.,* 656 F.2d at 189.

16. *See Allied Mktg. Group, Inc.,* 878 F.2d at 813; *Blue Bell Bio–Med.,* 864 F.2d at 1259 n. 7; *Sno–Wizard Mfg., Inc.,* 791 F.2d at 428.

17. *See Sun–Fun Prods., Inc.,* 656 F.2d at 189, 191. This factor arguably should be considered as a subfactor of the intent digit. *See Falcon Rice Mill, Inc.,* 725 F.2d at 345.

18. *See id.*

19. *See id.*

20. *See Armco, Inc.,* 693 F.2d at 1159 n. 8.

21. "Diversification makes it more likely that a potential customer would associate the nondiversified company's services with the diversified company, even though the two companies do not actually compete." *Id.* at 1161.

der determines the weight of each digit. *See Falcon Rice Mill, Inc.*, 725 F.2d at 345 n. 9. The factfinder balances the digits and determines whether there is a likelihood of confusion. *See Elvis Presley Enters., Inc.*, 141 F.3d at 196; *Sunbeam Prods., Inc.*, 123 F.3d at 257; *Society of Fin. Exam'rs*, 41 F.3d at 225; *Blue Bell Bio–Medical v. Cin–Bad, Inc.* 864 F.2d 1253, 1259–1260 (5th Cir.1989); *Marathon Mfg. Co.*, 767 F.2d at 217; *Falcon Rice Mill, Inc.*, 725 F.2d at 344; *Armco, Inc.*, 693 F.2d at 1158; *Chevron Chem. Corp.*, 659 F.2d at 703; *Soweco, Inc.*, 617 F.2d at 1186; *Amstar Corp.*, 615 F.2d at 258; *Kentucky Fried Chicken Corp.*, 549 F.2d at 384. Infringement cases "often involve line drawing in areas that are inherently 'fuzzy.'" *Soweco, Inc.*, 617 F.2d at 1182. Thus, the Fifth Circuit has implicitly discouraged the use of summary judgment in infringement cases, noting in one case that "identifying a genuine issue of material fact [is] not difficult." *Society of Fin. Exam'rs*, 41 F.3d at 226, 225–26. After considering the evidence submitted by the parties the court concludes that CIC has established issues of fact regarding the likelihood of confusion between the respective service marks and trade dress.

### 1. Similarity of Services

■ "The greater the similarity between the products and services, the greater the likelihood of confusion." *Exxon Corp.*, 628 F.2d at 505; *accord Oreck Corp.*, 803 F.2d at 171. Both CIC and NeoDyme provide corrective and preventative maintenance management for sophisticated hospital equipment.[22] Thus, a factfinder could decide that this digit balances in favor of a likelihood of confusion.

### 2. Similarity Between the Service Marks and Trade Dress

*a. The service marks*

In evaluating the similarity of CIC and NeoDyme's service marks the factfinder

must compare the marks' appearance, sound, and meaning. *See Elvis Presley Enters., Inc.*, 141 F.3d at 201. The court must consider the overall commercial impression of the marks, as well as the setting in which they appear. *See Amstar Corp.*, 615 F.2d at 261. In the final analysis this digit turns on whether, under the circumstances in which they are used, the marks are similar enough that customers are likely to conclude that CIC and NeoDyme are associated. *See Elvis Presley Enters., Inc.*, 141 F.3d at 201.

The four CIC service marks at issue are:

(1) AIM [SM],

(2) takeAIM [SM],

(3) Asset Internet Management [SM], and

(4) MMS [SM].

CIC argues that the following marks, as used by NeoDyme in promotional and business documents, are sufficiently similar to CIC's AIM [SM]:

(1) AIM,

(2) AIM [2],

(3) AIM2,

(4) AIM TWO,

(5) AIMT,

(6) AIM Technologies, Inc.,

(7) AIMTech Corporation,

(8) AIM Technologies Corporation, and

(9) TAKEAIM.[23]

CIC also argues that NeoDyme's internet webpage address, "takeaim.com," is similar to CIC's "takeAIM" service mark. Finally, CIC contends that the following phrases are similar to its MMS [SM] service mark:

(1) MMS [2],

(2) MMS 2, and

(3) MMS Two.[24]

---

**22.** Affidavit of Glenn S. Collins, III, ¶ 7, I Exhibits to NeoDyme's Motion for Summary Judgment [Docket Entry No. 43], Ex. 3.

**23.** CIC's Response to NeoDyme's Motion for Summary Judgment [Docket Entry No. 68] at 10–11; Appendices to CIC's Response [Docket Entry No. 74], App. G.

**24.** CIC's Response to NeoDyme's Motion for Summary Judgment [Docket Entry No. 68] at 10–11; Appendices to CIC's Response [Docket Entry No. 74], App. G.

Many of NeoDyme's service marks use CIC's service marks as their root (for example, *AIM* Tech Corporation and *MMS* Two). Except for the superscript numeral "2," NeoDyme's AIM[2] and MMS[2] marks are identical to CIC's AIM[SM] and MMS[SM]. Finally, NeoDyme actually uses CIC's "takeAIM" mark *in toto* as NeoDyme's domain name for its internet webpage address. The court concludes that CIC has raised an issue of fact as to whether the similarity of the various service marks would favor a finding of likelihood of confusion.[25]

### b. The trade dress

In evaluating the similarity of CIC and NeoDyme's trade dress, the factfinder must consider the overall trade dress, *i.e.*, the combination of features as a whole. *See Sunbeam Prods., Inc.*, 123 F.3d at 258. "[T]he scope of inquiry into similarity of design is considerably broader" for claims of trade dress infringement. *Chevron Chem. Co.*, 659 F.2d at 703.

CIC's trade dress claim focuses on the alleged similarity in layout, color scheme, and design of the proposals CIC and NeoDyme submitted to prospective customers. While not identical, the proposals are sufficiently similar to raise a fact issue on this digit. For example, both CIC and NeoDyme used a red and black color scheme for the lettering of their services' names. In CIC's proposal, titled "takeaim$_{SM}$," "take" is in black lower-case letters and "aim" is in red lower-case letters. A gold sphere dots the "I."[26] In NeoDyme's proposal, titled "AIM$^2_{SM}$," the "AIM" is in red capital letters. A gold sphere dots the "I," and both the superscript "2" and the subscript "SM" are in black.[27] Both companies use the same lettering and coloring scheme throughout their respective proposals whenever the name of their management service arises. While the trade dresses are not identical, the court concludes that they bear enough similarity to present an issue of fact, especially in light of the fact that the proposals offer virtually identical services developed from the same software.

### 3. Identity of Advertising Media

"The greater the similarity in the [parties' advertising] campaigns, the greater the likelihood of confusion." *Exxon Corp.*, 628 F.2d at 506. Because both CIC and NeoDyme use proposals, letters, and personal communication to advertise their services to potential customers,[28] CIC has established a fact issue on this digit.

### 4. Identity of Customers

The greater the similarity between each party's customer bases, the greater the likelihood of confusion. *See Exxon Corp.*, 628 F.2d at 505; *Amstar Corp.*, 615 F.2d at 262. NeoDyme, through the deposition of its representative, admits that it is "vying for the same customers" as CIC.[29] CIC has established an issue of fact on this digit.

### 5. Additional Factors

CIC has submitted evidence relevant to an additional factor that could persuade a factfinder in the digits of confusion analysis. NeoDyme was founded and staffed by former CIC employees.[30] This previous relationship

---

**25.** While NeoDyme's use of many of these service marks may fall under the fair-use doctrine, considerations of fair use do not impact the digits of confusion analysis. Fair use is an affirmative defense to be considered apart from the issue of likelihood of confusion.

**26.** CIC's Proposal, Declaration of James Stracener [Docket Entry No. 70], Ex. 6.

**27.** AIMTech Proposal, Exhibits to CIC's Response in Opposition to NeoDyme's Motion for Summary Judgment [Docket Entry No. 69], Ex. 8.

**28.** Declaration of Kenny R. Loveless (CIC Vice-President of Sales and Marketing) ¶ 6, Deposition of NeoDyme Technologies Corporation By and Through its Designated Representative Glenn S. Collins at 33, Exhibits to CIC's Response in Opposition to NeoDyme's Motion for Summary Judgment [Docket Entry No. 69], Exs. 9, 14.

**29.** NeoDyme Deposition By and Through Collins at 38, Exhibits to CIC's Response in Opposition to NeoDyme's Motion for Summary Judgment [Docket Entry No. 69], Ex. 14.

**30.** November 3, 1997, letter from Collins to Herbert Cleveland, Materials Management Supervisor for The Blood Center of Southeastern Michigan, I Exhibits to NeoDyme's Motion for Summary Judgment [Docket Entry No. 43], Ex. 9 at CIC2041; Company History, Exhibits to

between CIC and employees of NeoDyme is relevant evidence in the likelihood of confusion inquiry, *see Sun–Fun Prods., Inc.*, 656 F.2d at 191, although this factor often constitutes a subfactor of the analysis of the defendant's intent. *See Falcon Rice Mill, Inc.*, 725 F.2d at 345 n. 9.

### 6. The Balance

CIC has established issues of fact as to at least four primary digits of confusion, as well as at least one additional factor. Given the inherently factual nature of the inquiries into the relative strength of the service marks and trade dress, NeoDyme's intent, and the existence of actual confusion, the court need not examine these remaining digits in considering NeoDyme's motion for summary judgment. Indeed, while CIC has established fact issues on four out of the seven digits of confusion, Fifth Circuit precedent is clear that even a minority of digits favoring a finding of likelihood of confusion will suffice. At the very least, the court is persuaded that CIC has established an issue of fact as to whether NeoDyme's conduct created a likelihood of confusion.[31]

### 7. Affirmative Defenses

NeoDyme raises the affirmative defenses of fair use and abandonment to CIC's infringement claims. Because NeoDyme has the burden of proof at trial on its affirmative defenses, *see Conan Properties, Inc.*, 752 F.2d at 153, to prevail on its motion for summary judgment on the basis of fair use or abandonment NeoDyme .must establish with competent summary judgment evidence

each element of the defense. *See David L. Aldridge Co. v. Microsoft Corp.*, 995 F.Supp. 728, 742 (S.D.Tex.1998). CIC may avoid summary judgment on the affirmative defenses by identifying a fact issue on an element of each affirmative defense.

#### a. Fair use

NeoDyme first contends that the fair-use doctrine applies to its conduct.[32] Under § 43(c)(4) of the Lanham Act plaintiffs may not recover for

(1) "[f]air use of a famous mark by another person in comparative commercial advertising or promotion to identify the competing goods or services of the owner of [a] famous mark,"

(2) "[n]oncommercial use of a mark," or

(3) "[a]ll forms of news reporting and news commentary."

15 U.S.C. § 1125(c)(4); *cf.* Lanham Act § 33(b)(4), 15 U.S.C. § 1115(b)(4) (articulating a fair-use defense with respect to registered service marks). In order to prevail on its fair-use defense, NeoDyme must establish that

(1) CIC's service marks are descriptive,

(2) NeoDyme's use of the terms at issue is descriptive,

(3) NeoDyme used the service marks in good faith, and

(4) NeoDyme did not use the terms as service marks.

*See Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 791, 796 (5th Cir. 1983) (holding that fair use only applies to

---

CIC's Response in Opposition to NeoDyme's Motion for Summary Judgment [Docket Entry No. 69], Ex. 17.

**31.** NeoDyme raises several issues in its motion for summary judgment that are relevant to the question of likelihood of confusion. For instance, NeoDyme argues that its customers are sophisticated entities that engage in meaningful negotiations before deciding to purchase the services that each party offers. While this fact, if established, is relevant and could weigh against a finding of likelihood of confusion, *see, e.g., Oreck Corp.*, 803 F.2d at 173–74, the effect of such a finding at this stage of the proceeding, in light of the other factors that may balance in favor of a likelihood of confusion, only demonstrates that

fact issues preclude summary judgment. The court has therefore limited its analysis of likelihood of confusion to an inquiry into whether CIC has established fact issues as to digits that would favor a finding of likelihood of confusion. The court will address NeoDyme's affirmative defenses separate from the digits of confusion.

**32.** NeoDyme does not explicitly style this argument as an affirmative defense to liability, but instead incorporates fair use into its argument that an injunction is not appropriate. Though perhaps inartfully raised, the court will nonetheless construe NeoDyme's motion as having raised fair use as an affirmative defense to liability and not simply as an argument related to the appropriate remedy.

descriptive marks); *Soweco, Inc.*, 617 F.2d at 1186–87 (holding that the defendant's use of the mark must be descriptive and in good faith and that fair use does not apply if the defendant uses the terms at issue as a service mark).

The evidence shows that NeoDyme used CIC's service marks as its own service marks. The dominant, root words in Neo-Dyme's "AIM $^2$" and "MMS $^2$" service marks are CIC's "AIM" and "MMS" service marks. NeoDyme used both "AIM $^2$" and "MMS $^2$" as service marks in its promotional materials. For instance, NeoDyme called one of its services "MMS $^2_{SM}$" and forwarded to potential customers proposed management agreements titled "MMS $^2_{SM}$ agreement" in large, bold letters.[33] Likewise, NeoDyme called another service "AIM $^2_{SM}$" and forwarded to potential customers a proposal titled "AIM $^2$ $_{SM}$" in large, red letters.[34] NeoDyme used CIC's "takeAIM" mark as the domain name for NeoDyme's internet webpage address.[35] Because the evidence presents fact issues on at least one element of the fair-use defense, NeoDyme is not entitled to a summary judgment based on this defense.[36]

### b. Abandonment

NeoDyme also contends that CIC abandoned the "AIM" service mark in favor of "takeAIM." NeoDyme does not allege that CIC abandoned any of its other service marks. Under § 45 of the Lanham Act

A mark shall be deemed to be 'abandoned' if either of the following occurs:

(1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecu-

tive years shall be prima facie evidence of abandonment. 'Use' of a mark means the bona fide use of such mark in the ordinary course of trade, and not made merely to reserve a right in a mark.
(2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark. Purchaser motivation shall not be a test for determining abandonment under this paragraph.

15 U.S.C. § 1127; *cf.* Lanham Act § 33, 15 U.S.C. § 1115(b)(2) (declaring abandonment to be a defense against claims of infringement of registered marks). To prevail on this defense NeoDyme must show:

(1) nonuse of the service mark for a period of time and

(2) that CIC intended not to resume use of the mark.

*See id.* § 1127; *Exxon Corp.*, 695 F.2d at 99, 101; *Sheila's Shine Prods., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 124 (5th Cir.1973). NeoDyme has the burden of establishing both of these elements. *See Exxon Corp.*, 695 F.2d at 99.

James Stracener, CIC's Vice–President for National Accounts, stated that "for the period running from at least as early as June of 1996 through the present ..., CIC has continuously used its 'AIM' service mark" in several ways.[37] He also stated that CIC did not replace its "AIM" service mark with "takeAIM," but rather began using both interchangeably.[38] CIC has thus established a fact issue as to whether it discontinued its use of the "AIM" service mark. Because

---

**33.** MMS $^2_{SM}$ agreement and Dec. 23, 1997, letter from Martin F. Mann (Vice–President of AIM Technologies Corporation), Exhibits to CIC's Response in Opposition to NeoDyme's Motion for Summary Judgment [Docket Entry No. 69], Ex. 1.

**34.** AIM $^2_{SM}$ Proposal, Exhibits to CIC's Response in Opposition to NeoDyme's Motion for Summary Judgment [Docket Entry No. 69], Ex. 8.

**35.** Declaration of Jeffrey Keys (CIC's Director of Management Information Systems) ¶¶ 8–9 [Docket Entry No. 6].

**36.** The court need not examine the other elements of fair use and expresses no opinion on the evidence as to those elements.

**37.** Stracener Declaration ¶ 5 [Docket Entry No. 70].

**38.** Stracener Declaration ¶¶ 6–7 [Docket Entry No. 70].

this fact issue precludes NeoDyme from prevailing on its abandonment defense, the court need not address the intent issue.

### 8. Summary

NeoDyme's motion for summary judgment does not challenge the protectability of CIC's service marks or trade dress. CIC has established fact issues as to the likelihood of consumer confusion between the parties' service marks and trade dress. CIC has also raised fact issues precluding summary judgment on the affirmative defenses of fair use and abandonment. The court will therefore deny NeoDyme's motion for summary judgment as to CIC's Lanham Act and common-law infringement claims. Because the court has not made any finding of fact as to infringement and because courts may address questions of remedy in infringement cases only *after a finding* of infringement, *see Sicilia Di R. Biebow & Co.*, 732 F.2d at 425, the court concludes that it is premature at this time to determine whether a permanent injunction is appropriate or whether CIC may recovery monetary relief on its infringement claims.

### C. False Advertising

CIC also brings a claim of false advertising against NeoDyme under § 43(a) of the Lanham Act. CIC alleges that NeoDyme committed false advertising by:

(1) stating in its proposal and on its webpage that "Dr. Collins has secured the rights to all of the intellectual property and confidential information of CIC,"

(2) implying in its proposal that NeoDyme (AIMTech at the time) had a "track record" by saying, "In fact, since we launched the AIM concept in 1996, we increased the level of savings several times, with each discount passed along to both new and existing customers,"

(3) advertising that NeoDyme was the first service provider to cover all hospital equipment, and

(4) telling customers that the "vast majority" of CIC employees now work for NeoDyme.[39]

NeoDyme argues that because in each instance it described facts truthfully it is entitled to summary judgment on this claim.

Section 43(a) of the Lanham Act creates a federal cause of action for false advertising. *See Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 700–01 (5th Cir. Unit A Oct.1981); *Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir.1975). This provision states, in relevant part:

> Any person who, on or in connection with any goods or services ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which-... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B).

To prevail on a claim for false advertising CIC must show that:

(1) NeoDyme made a false or misleading statement as to its own services or that of another,

(2) "there is actual deception or at least a tendency to deceive a substantial portion of the intended audience,"

(3) the misrepresentation is material (*i.e.*, likely to influence purchasing decisions), and

(4) CIC is likely to suffer economic injury.

*Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1383 n. 3 (5th Cir.1996). Because NeoDyme's motion for summary judgment only challenges the first element, arguing that

---

**39.** Plaintiff CIC's Answers to Defendants AIMTech's (NeoDyme's) and Collins' First Set of Interrogatories No. 18, I Exhibits to NeoDyme's Motion for Summary Judgment [Docket Entry No. 43], Ex. 7. The parties briefs do not agree on which statements are actually at issue. The court will rely on CIC's interrogatory answer and analyze the statements identified there in evaluating the false advertising claim.

each of the statements it made were true,[40] the court will limit its analysis to whether CIC has presented summary judgment evidence that NeoDyme made a false or misleading statement.[41]

1. "Dr. Collins ha[s] secured the rights to all of the intellectual property and confidential information of CIC."

NeoDyme made this statement in the proposals it distributed to potential customers.[42] NeoDyme argues that this statement is true because Collins indeed had secured these rights through the purchase and licensing agreements entered pursuant to the settlement agreement. Section 4.8 of the Purchase Agreement provides that CIC "shall, pursuant to a license agreement … license to the Seller [Collins] certain valuable and proprietary data bases and software essential to the Company's business (the 'IP')." However,

[a]ny improvements to the IP developed by either Shareholder or the Company following August 5, 1997[,] and not used by the Company in the ordinary course of business shall not be subject to the license nor shall any such improvement be the property of any party other than the party making such improvements. The Seller [Collins] shall be entitled to use any of the Confidential Information in competition with the Company.[43]

As CIC points out in response, the purchase agreement does not grant Collins or Neo-Dyme any rights to the service marks or trade dress, nor does it allow Collins to use *all* of CIC's confidential information. Thus, a factfinder could conclude that NeoDyme

falsely claimed that its founder had secured the rights to all of CIC's intellectual property and confidential information.

2. Statements Implying that NeoDyme Had a Track Record

CIC complains about a statement in Neo-Dyme's proposals that implies that NeoDyme had a history of providing quality service to its customers: "[S]ince *we* launched the AIM concept in 1996, *we* increased the level of savings several times, with each discount passed along to both new and existing customers."[44] NeoDyme argues that Collins developed the AIM concept while at CIC and that therefore "[t]here was nothing deceptive or misleading about Collins'[s] advertising that he 'launched' the AIM concept."[45] Neo-Dyme would be correct if the statement at issue only said that much, but it does not. This statement appeared in an AIMTech proposal and used the plural first-person pronoun "we," not the singular third-person pronoun "he" that one would expect to see if the author of the statement intended to refer only to Collins. The use of "we" implies that NeoDyme as an organization developed the AIM concept in 1996, when in fact CIC did so, and did so a year before NeoDyme even came into existence. A factfinder could thus conclude that NeoDyme falsely implied that it had developed the AIM concept and had a record of providing quality service to its customers.

3. "Until now, maintenance outsourcing programs have never really covered all equipment."

NeoDyme also made this statement in its

---

**40.** NeoDyme's Motion for Summary Judgment [Docket Entry No. 42] at 24–27.

**41.** NeoDyme argues in its reply to CIC's response that CIC failed to show materiality, causation, or damage. (NeoDyme's Reply in Support of Motion for Summary Judgment [Docket Entry No. 94] at 19). However, NeoDyme did not challenge these elements in its *motion*. The motion simply alleges that each statement "described facts truthfully, warranting summary judgment on this claim." (NeoDyme's Motion for Summary Judgment [Docket Entry No. 42] at 24). Therefore, the only issue as to false advertising before the court on the motion for summary judgment is the veracity of the statements in question, not their materiality and not the issues of causation or remedy.

**42.** AIM[2] Proposal at CIC80861, Exhibits to CIC's Response in Opposition to NeoDyme's Motion for Summary Judgment [Docket Entry No. 69], Ex. 8.

**43.** Purchase Agreement § 4.8, at 9, I Exhibits to NeoDyme's Motion for Summary Judgment [Docket Entry No. 43], Ex. 1.

**44.** AIM[2] Proposal at unnumbered page 8, I Exhibits to NeoDyme's Motion for Summary Judgment [Document Entry No. 43], Ex. 10 (emphasis added).

**45.** NeoDyme's Motion for Summary Judgment [Docket Entry No. 42] at 26.

proposal.[46] Collins testified in his deposition that CIC had begun to cover all equipment while he was still at the company, although CIC discontinued this universal coverage after he left in October of 1997.[47] CIC has thus established a fact issue as to whether NeoDyme falsely stated that "maintenance outsourcing programs have never really covered all equipment."

4. "[T]he vast majority of CIC employees left to join NeoDyme."

NeoDyme made this statement in its proposal after listing by name seven former CIC executives who had joined NeoDyme and claiming that "100% of CIC Corp.'s Sales Support Department, 100% of the MIS Computer Systems Department, 100% of the Software Development Department, 100% of the Statistical Analysis and Modeling Department, and 80% of the Accounting Department are now with AIM Technologies Corp."[48] According to Collins's affidavit, out of 133 total employees at CIC, 85 came over to NeoDyme.[49] CIC does not challenge this number. Thus, according to Collins's figures, 63.9% of CIC's work force left to go to NeoDyme. This is more than half, but it is less than 2/3. While a majority did leave CIC, a fact issue remains as to whether that majority was "vast."[50]

5. Conclusion

NeoDyme only challenges the falsity of the statements at issue in its motion for summary judgment. Because the summary judgment evidence presents issues of fact as to the veracity of these statements the court will deny summary judgment on CIC's false advertising claim.

### D. Conversion

 Federal courts have a continuing obligation to examine whether they have subject matter jurisdiction over claims presented to them. *See Feigler v. Tidex, Inc.*, 826 F.2d 1435, 1437 (5th Cir.1987). As explained above,[51] the court concludes that it does not have supplemental subject matter jurisdiction over CIC's conversion claims because they do not form the same case under Article III as CIC's Lanham Act claims. The court will therefore dismiss CIC's conversion claim against NeoDyme for lack of subject matter jurisdiction.

### IV. CONCLUSION AND ORDER

The court does not have subject matter jurisdiction over any of CIC's claims against Collins or over CIC's conversion claim against NeoDyme. CIC has, however, identified issues of fact that preclude summary judgment on its claims against NeoDyme for infringement, false advertising, and unfair competition under the Lanham Act and Texas common law. Collins's Motion to Dismiss (Docket Entry No. 40) is **GRANTED** and all claims against Glenn S. Collins, III, are **DISMISSED without prejudice.** Collins's Motion for Summary Judgment (Docket Entry No. 38) is **MOOT.** CIC's claim of conversion against AIMTech Corporation (a/k/a NeoDyme) is **DISMISSED without prejudice** for lack of subject matter jurisdiction. NeoDyme's Motion for Summary Judgment (Docket Entry No. 42) is **DENIED.**

**46.** AIM² Proposal at CIC 80863, Exhibits to CIC Response in Opposition to NeoDyme's Motion for Summary Judgment [Docket Entry No. 69], Ex. 8.

**47.** NeoDyme Deposition By and Through Collins, its Designated Representative at 134, Exhibits to CIC's Response in Opposition to NeoDyme's Motion for Summary Judgment [Docket Entry No. 69], Ex. 14.

**48.** AIM² Proposal at CIC80861, Exhibits to CIC's Response in Opposition to NeoDyme's Motion for Summary Judgment [Docket Entry No. 69], Ex. 8.

**49.** Collins Affidavit ¶ 6, I Exhibits to NeoDyme's Motion for Summary Judgment [Docket Entry No. 43], Ex. 3.

**50.** *Neither side provides a definition of "vast."* Although 63.9% moved to NeoDyme, 36.1% did not; the difference is 27.8%. More than half left; indeed, more than three-fifths left. But is this a "vast" majority?

**51.** *See supra* Part II.