**SOCIETY OF FINANCIAL EXAMINERS, Plaintiff–Appellee,**

v.

**NATIONAL ASSOCIATION OF CERTIFIED FRAUD EXAMINERS INC., et al., Defendants,**

**National Association of Certified Fraud Examiners, et al., Defendants–Appellants.**

**No. 94–50074.**

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1995.

John J. McKetta, III, David G. Henry and G. Michael Lawrence, Graves, Dougherty, Hearon & Moody, P.C., Austin, TX, for appellants.

Stephen Ravel, Bickerstaff, Heath & Smiley, L.L.P., Austin, TX, Vivian Polak, Deirdre F. Curtis, LeBoeuf, Lamb, Leiby & MacRae, New York City, for appellee.

Jerald A. Jacobs, Jenner & Block, Robert A. Wynbrantdt, Nory Miller, Washington, DC, for amicus Nat'l Org. for Competency Assurance, et al.

Before HIGGINBOTHAM, JONES and BARKSDALE, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Demand apparently exists for those professionals with the designation "CFE" on their resume. Two organizations offer the educational and training programs necessary to endow these initials with meaning. Unfortunately, whereas the defendant, the National Association of Certified Fraud Examiners, intends "CFE" to designate "Certified Fraud Examiner," the plaintiff, the Society of Financial Examiners, has historically utilized the same initials to represent a "Certified Financial Examiner." Whether the Lanham Act entitles the initial user of the designation to prohibit confusion generated by this state of affairs is resolved by answering two subsidiary questions:

(1) Is "CFE" too generic a mark to qualify for statutory protection?;

(2) Does a "likelihood of confusion" exist?

The district court thought the answers obvious, and entered summary judgment. Reviewing the district court's grant of summary judgment de novo, this court determines that these fact-intensive inquiries cannot be conducted properly without a trial. The district court's judgment must therefore be re-

versed.[1]

## I.

The Society of Financial Examiners (SOFE) was organized in 1973 as a non-profit professional organization of financial examiners and public-sector regulators who supervise, review and analyze the financial security of banks, insurance companies, credit unions, savings and loan associations and other financial institutions. SOFE maintains an array of accreditation and certification qualifications for membership in its organization. Most notably, SOFE demands adherence to a canon of ethics, successful performance on a comprehensive examination, and satisfaction of continuing education standards. Since 1974, SOFE has used "CFE" to designate this exam ("CFE Exam"), the preparation materials and programs for the test ("CFE Program"), and to refer to those who have completed the exam and adhere to the other requirements as "CFE Members." In September of 1992, SOFE obtained a service mark registration for "CFE" educational goods and association services.[2]

In contrast, the National Association of Certified Fraud Examiners (NACFE) is an unincorporated professional association that has grown in a few years' time to include about 10,000 members engaged in detecting and deterring fraud and white-collar crime. Like SOFE, NACFE obliges its members to pass a uniform examination, maintain competency through continuing education and heed a code of professional ethics. In 1988, NACFE selected the designation "certified fraud examiner" and the corresponding acronym "CFE" to recognize those accountants, law enforcement professionals, regulators, lawyers, professors, auditors, and security managers and investigators who satisfied its standards.

Both organizations publish newsletters, organize and conduct seminars and conferences, and advise regulators and quasi-regulators on issues of concern.

## II.

■ "The gravamen for any action of trademark infringement or common law unfair competition is whether the challenged mark is likely to cause confusion." *Marathon Manufacturing Co. v. Enerlite Products*, 767 F.2d 214, 217 (5th Cir.1985) (citations omitted). In this circuit, whether NACFE's later use of "CFE" is "likely to cause confusion" is a question of fact. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir.1980). Even total confusion, however, is irrelevant if "CFE" constitutes a "generic" mark. That too is a question of fact. *American Automobile Association v. AAA Legal Clinic*, 930 F.2d 1117, 1121 (5th Cir.1991).

Although both critical determinations were factual, the district court believed summary judgment appropriate. Whereas general principles of summary judgment assail this conclusion, the explicit guidance of *Marathon Manufacturing*—in the context of a nearly identical factual predicate—decimates it. In *Marathon Manufacturing*, this court repudiated exercise of summary judgment to determine whether a likelihood of confusion existed between "MARATHON" and "MARATHON 10" marks. *Id.* at 217. ("Although the parties filed cross-motions for summary judgment, this procedure was improper.") Notably, both parties had filed motions for summary judgment asserting that no material facts were in dispute.

---

1. The district court did not address the merits of the plaintiff's pendent state law claims. Presented as an interlocutory appeal of that court's judgment, this court likewise does not resolve nor consider those claims.

2. The trademark registration was limited to:
   i. [International Class 41] "Educational services; namely, providing self-study courses designed for persons employed or engaged by or on behalf of government regulatory authorities to conduct or assist in the financial examination of banks, savings and loans, credit unions, insurance companies and other financial institutions...."
   ii. [International Class 42] "Association services; namely, promoting the interests of financial examiners presently or formerly employed or engaged by or on behalf of government regulatory authorities to conduct or assist in the financial examination of banks, savings and loans, credit unions, insurance companies and other financial institutions...."

Notwithstanding this suggestion, identifying a genuine issue of material fact was not difficult in *Marathon* nor is it here. "[T]he fact that both parties simultaneously are arguing that there is no genuine issue of fact does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *Podberesky v. Kirwan,* 38 F.3d 147 (4th Cir.1994) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (2d ed. 1983)).[3] Indeed, both factual questions—whether CFE is generic and the existence of likelihood of confusion—pose a genuine issue of fact in this case.

■ A dispute about a material fact is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Hence this court tests the propriety of summary judgment by evaluating whether a reasonable fact finder could return a verdict for NACFE on either issue. Simply, would the result of submitting the case to a rational trier of fact be preordained? Considering all evidence in the light most favorable to the non-moving party and resolving all reasonable inferences in favor of the non-moving party, *id.* at 249, 106 S.Ct. at 2510–11, precipitates substantial doubt as to the proper solution to either issue. On this record, a trier-of-fact would be entitled to decide that "CFE" was generic or to adjudge the likelihood of confusion farfetched.

## III.

"The terms 'generic' and 'trademark' are mutually exclusive." McCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 12.01[1] at 12–3 (3d ed. 1992). Citing *Blinded Veterans Assoc. v. Blinded American Veterans Foundation,* 872 F.2d 1035, 1041 (D.C.Cir.1989) (Ginsburg, R.B., J.) (holding "blinded veterans association" generic), NACFE asserts that "certified financial examiner" likewise denotes little more than a class of individuals.[4] SOFE is also summoned to distinguish "certified financial examiner" from the generic "multistate bar examination" and "MBE." *National Conference of Bar Examiners v. Multistate Legal Studies,* 692 F.2d 478, 488 (7th Cir.1983).[5] This circuit challenges the trier-of-fact to isolate the generic. *Texas Pig Stands v.*

**3.** "Not infrequently, the parties in such a case do not really mean to suggest that there are no material questions of fact. Rather, they intend to submit the remaining fact questions to the district court for resolution on the existing record." *Fritiofson v. Alexander,* 772 F.2d 1225, 1239 (5th Cir.1985). This is precisely what transpired in *Marathon.*

[C]ounsel ... agreed that what really occurred was a submission of the case on the written record, developed after extensive discovery and supplemented with oral argument before the district judge. Despite the label: summary judgment, all parties fully agree that the district court reached a conclusion by making a single finding of fact as to likelihood of confusion based on underlying facts which were either not substantially in dispute or left to the district court to decide from the voluminous record on submission.

767 F.2d at 217. It is inconceivable here, however, that NACFE consented to submission on a record. Though its motion for summary judgment did urge the absence of a material disputed fact, NACFE merely insisted that "CFE" is unprotectable as a matter of law. Even if the district court overlooked NACFE's point, NACFE was assuredly correct; everything else would become moot by prevailing on this account.

Conversely, NACFE's response to SOFE's motion for summary judgment pointedly described the presence of material questions of fact should its unprotectability *per se* argument be spurned by the district court. For example, the first paragraph declared: "Even if a likelihood of confusion analysis was not rendered moot by Defendants' Motion for Summary Judgment, there does exist a material question of fact concerning the nature o[r] likelihood of confusion which is cognizable in a case of this nature."

**4.** NACFE also contends that SOFE's members use "CFE" effectively as a designation of title rather than to indicate the source or origin of the training and standards they comply with. As a designation of title, NACFE asserts, "CFE" is unprotectable as a matter of law. We cannot evaluate these contentions without a predicate factual finding whether the "CFE" mark is so used or understood.

**5.** "We need not deal separately with the question whether the initials ["CFE"] are generic; if the full name is generic, an abbreviation is treated similarly." *Blinded Veterans,* 872 F.2d at 1041 n. 12 (citations omitted).

*Hard Rock Cafe*, 951 F.2d 684, 692 (5th Cir.1992).

In principle, the touchstone is clear: "[T]he test for genericness [sic] is whether the public perceives the term primarily as the designation of the article." *Blinded Veterans*, 872 F.2d at 1041. In contrast, actually to divine whether "pig sandwich," for example, characterizes an article itself (*i.e.*, a dish of barbecued pork on wheat or white bun) or instead typifies a singular member of the article's class [6] is "difficult." *Texas Pig Stands*, 951 F.2d at 692.[7] Put another way, "the primary significance of" a trademark "in the minds of the consuming public is not the product but the producer." *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938).

To secure protection, therefore, "CFE" must invoke the source of the designation and not just intimate a financial examiner who has been certified. Like J.D., M.B.A., Ph.D., and C.P.A., "certified financial examiner" could be poised to fail this test.

> A mark answers the buyer's questions "Who are you? Where do you come from?" "Who vouches for you?" But the name of the product answers the question "What are you?" Many competitive products will give the same answer, regardless of source or origin—*e.g.*, a computer, a box of cigars, a bar of soap. Such generic designations tell the buyer what the product is, not where it came from.

McCarthy § 12:01[2] at 12–4. Enlightened by this gauge, unqualified faith that "CFE" primarily signifies origin could be only divinely inspired.[8] The summary judgment must be reversed on this basis alone.

Nevertheless, that "certified financial examiner" does—or did—evince provenance is not inconceivable. An apprehension of this possibility elucidates the Supreme Court's observation in *Ibanez v. Florida Dept. of Business and Professional Regulation*, —— U.S. ——, ——, 114 S.Ct. 2084, 2091, 129 L.Ed.2d 118 (1994), that " 'Certified Financial Planner' and 'CFP' are well-established, protected federal trademarks that have been described as 'the most recognized designation[s] in the planning field.' " As opposed to igniting a revolution, Justice Ginsburg merely affirmed that "CFP" was an ostensible token of source. Because no question of trademark law was before the Court in *Ibanez*, however, its statement, while suggestive, is not binding on lower courts. *Ibanez* is thus an instructive reminder that "CFE" *could* import to the public a "particular merchandiser" and not chiefly "the type of service merchandised." *National Conference of Bar Examiners*, 692 F.2d at 488. NACFE thus might not be entitled to summary judgment either.[9]

### IV.

■ To prove its claim of trademark infringement [plaintiff] was required to show that [defendant's] use of [the mark] was likely to create confusion in the minds of potential purchasers as to source, affiliation, or sponsorship of the parties' products.

*Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 170 (5th Cir.1986). Whether NACFE's use of "CFE" or "certified fraud examiner" was likely to confuse any potential

---

6. For instance, the type of shredded pork sandwich produced by Pig Stands.

7. The province to embrace either conclusion was recognized. *Id.*

8. Indeed, many terms already found generic are sufficiently akin to "certified financial examiner" to have counseled restraint in the exercise of summary disposition. These are illustrative:

> AEC (trade show on architecture, engineering and construction)
> ASSOCIATION OF ENERGY ENGINEERS (organization of engineers specializing in the field of energy)
> CONSUMER ELECTRONICS MONTHLY (title of magazine)
> INDUSTRIAL RELATIONS COUNSELORS, Inc. (seminars on industrial relations)
> VIDEO BUYER'S GUIDE (magazine for home television products)

*Id.* at § 12.03, at 12–32:41 (collecting cases). Contrast "CFE" and these examples to the "American Automobile Association" or "Better Business Bureau" marks, neither which could be understood in ordinary English usage to describe "a class of services." *American Automobile Association*, 930 F.2d at 1121.

9. The denial of NACFE's motion for summary judgment is not before this court.

customers of SOFE's goods and services is the precise inquiry.[10] Intuitively, the use of "CFE" by two organizations in the market for professionals who scrutinize financial representations breeds confusion. The record is too incomplete, however, to constrain a reasonable trier-of-fact from concluding confusion unlikely to occur in potential customers.[11]

Specifically, the dearth of evidence of actual confusion vis à vis *SOFE's educational goods and services* [12] could jeopardize the expectation of confusion.[13] "Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion." *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 263 (5th Cir.1980) (citation omitted). Hence SOFE's inability to produce an actual instance of confusion, or at most twelve examples over a five year period, refutes the likelihood of confusion. Fidelity to *Amstar* impels reversing the district court: "Indeed, the fact that only three instances of actual confusion were found after nearly fifteen years of extensive concurrent sales under the parties' respective marks raises a presumption against likeli-

hood of confusion in the future." *Id.* (citation omitted).[14]

Moreover, material disputes apparently exist on other "digits of confusion." [15] For example, although SOFE and NACFE's use of the exact same initials—"CFE"—manifests a "similarlity of design," this fact alone is not conclusive on the digit. *Marathon Mfg.,* 767 F.2d at 218 ("the court erroneously focused on the similarity between the words 'Marathon' and 'Marathon 10,' rather than the overall dissimilarity between the composite marks or corporate logos used by each company"). Yet the district court ignored the distinctive presentations of their respective marks in the record in concluding "[t]he 'CFE' mark used by the defendants is identical to that used by the plaintiffs." The visual contrast easily suffices to empower a trier-of-fact to decide otherwise.

Similarly, the district court mistakenly assumed "identity of purchasers" to be unassailable. Although SOFE convincingly documented some tangency with NACFE's marketing, "[t]here are substantial dissimilarities between the predominant purchasers of plaintiff's and defendants' products." *Amstar,* 615 F.2d at 262. In particular, SOFE's

---

**10.** In this circuit, seven factors relevant to the ultimate question of likelihood of confusion have been identified: the type of trademark at issue; similarity of design; similarity of product; identity of retail outlets and purchasers; identity of advertising media utilized; defendant's intent; and actual confusion. *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 259 (5th Cir.1980). The magistrate judge made "findings" on each of these.

**11.** The plaintiff need not, however, *prove* confusion in actual consumers. *Fuji Photo Film v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591, 597 (5th Cir.1985) (error to discount evidence of actual confusion on part of distributors and trade show visitors). Evidence of confusion in others permits the inference of confusion of purchasers. *Id.* (confusion in customers inferred from confusion in retailers, sales clerks, distributors) (collecting cases).

**12.** SOFE's affidavits support "at least twelve known instances of actual confusion." Whereas all of these are probative in a fact-finder's assessment of the likelihood of confusion, none represents confusion by a consumer of SOFE's wares. Seven of the "instances" occurred in an employment interview (or closely analogous) context. The other five episodes of confusion reflected

mistaken presumptions that arose briefly from the display of "CFE" on a business card or letterhead.

**13.** Recall *Oreck* demands confusion over the parties' products. SOFE must therefore establish a likelihood of confusion over the commodities it markets.

**14.** In *Oreck,* this court found the plaintiff's "inability to point to a single incident of actual confusion" in light of concurrent use of the similar marks for seventeen months "highly significant." 803 F.2d at 173.

**15.** Contrary to NACFE's suggestion, SOFE is not required to produce evidence on all seven "digits" recognized by this court. These digits are not elements of a plaintiff's cause of action, but instead comprise a nonexhaustive collection of considerations that may be relevant to the ultimate factual determination—Are the actions of the defendant likely to create confusion? *Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 150 (5th Cir.1985) ("The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported by even a majority of the seven factors.")

marked accent on public regulatory officials commanded a more refined analysis of the congruence between the parties' potential customers. *Id.* (pivotal difference in advertising to 18–to–34 year old single males and middle-aged housewives).

Whatever the final outcome of this case, we are persuaded that only a full trial on the merits, preceded by adequate discovery, will properly sort out the protectability of "CFE."[16]

For the foregoing reasons, we VACATE the injunction of the district court, and REMAND for trial.

---

**16.** Because we presume adequate discovery will take place prior to a trial, NACFE's "newly dis-   covered" evidence motion is moot.