Revised July 9, 1999

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-11149

WANDA KING, on behalf of Freddie King, Individually,

Plaintiff-Appellant-Cross-Appellee,

versus

ROY C. AMES, ET AL.,

Defendants,

ROY C. AMES, Individually, doing business as
Clarity Music and Home Cooking Records,

Defendant-Appellee-Cross-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

July 6, 1999

Before WISDOM, STEWART, and DENNIS, Circuit Judges.[*]

CARL E. STEWART, Circuit Judge:

Wanda King, on behalf of Freddie King, seeks reversal of the district court's order granting

summary judgment for Roy C. Ames on three of her six claims, and judgment as a matter of law on

_____

[*]Judge Wisdom was a member of the panel that heard oral arguments, but due to his death on May 15, 1999 did not participate in this decision. This case is being decided by a quorum. See 28 U.S.C. § 46(d) (1996).

two of the remaining three claims.  Ames cross-appeals seeking judgment as a matter of law or remittitur as to the sixth claim.  For the reasons that follow, we affirm the decision of the district court in part, and reverse in part.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant Wanda King ("King") is the daughter of Freddie King, a deceased internationally-recognized blues musician. Roy C. Ames ("Ames") is a music producer doing business as Clarity Music and Home Cooking Records. Through a series of agreements beginning in 1990 and ending in 1994, Ames licensed Collectables [sic] Records to use three master recordings made by Freddie King. Two were full-length compact discs, *Freddie King Live!* (*"Live"*) and *Freddie King Live at the Texas Opry* (*"Opry"*). The third was the song "Bluesband Shuffle," also known as "Boogie on Down" ("Bluesband Shuffle").

Upon learning that Ames was marketing her father's recordings, King contacted Ames for the purpose of executing a licensing agreement. On August 17, 1993, an agreement ("1993 agreement") was reached between Ames and King's mother, Jessie King, the widow of Freddie King. King contends that this agreement permitted Ames to market the *Opry* disc, and to use Freddie King's name, likeness, and biographical information to assist in that marketing. Ames contends that the agreement covered *all three* masters in question, *Opry*, *Live*, and "Bluesband Shuffle.*"*

Ames claims that he made an initial payment of $3,000.00 to Jessie King at the same time he sent the 1993 agreement. Ames further contends that between the initiation of the 1993 agreement and November 2, 1994, he made additional payments to Jessie King totaling $1,500.00. Nevertheless, on November 2, 1994, King sent Ames a letter expressing concern over the payments. Specifically, King focused on the scope of the licensing agreement and the timeliness of royalty statements and payments. In this letter, King informed Ames that she was terminating the licensing agreement.[1]

---

[1]Indeed, Freddy King captured the essence of most terminated relationships:

You packed up and left me/

On November 30, 1994, Wanda King filed copyright certificates with the Copyright Office of the United States for *Opry* and *Live*. Later, on March 27, 1995, King filed copyright certificates with the copyright office for "Bluesband Shuffle."

On September 18, 1995, Ames sent King a royalty check for $2,440.63. King cashed the check but wrote "account against damages" on it. On December 28, 1995, King filed a complaint on behalf of her deceased father against Ames and Collectibles, Inc. (collectively, the "defendants").[2] Therein, she alleged violations of the Lanham Trade-Mark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1051-1127 (1994 & Supp. 1999); the Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. § 101, *et seq*. (1994 & Supp. 1999); unfair competition; negligence; misappropriation; and breach of contract. The district court exercised federal question jurisdiction pursuant to 28 U.S.C. § 1331 (1994) over the Lanham Act and Copyright Act claims and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 (1994).

Ames filed a motion for summary judgment that the district court granted as to the Lanham Act claim, the unfair competition claim, and the negligence claim. A jury trial was held on the remaining three claims: copyright infringement, misappropriation, and breach of contract. The jury found in favor of King on all three claims. Upon motion of Ames, the district court granted

> And didn't tell me the reason why.
>
> You packed up and left me/
> And didn't tell me the reason why.
>
> If I didn't please you baby/
> It isn't because I didn't try.

FREDDY KING, *Lonesome Whistle Blues*, on HIDE AWAY: THE BEST OF FREDDY KING (Rhino 1993) ("HIDE AWAY").

[2]Collectibles, Inc., which conducts business as Collectables [sic] Records, is no longer a party to this suit.

judgment as a matter of law for the defendants on the copyright infringement and misappropriation claims. The court ordered judgment entered for King on the only remaining claim, breach of contract.

King appeals the district court's rulings granting summary judgment on the Lanham Act, unfair competition, and negligence claims. She also appeals the district court's order granting judgment as a matter of law for the defendants on her copyright infringement and misappropriation claims. Ames cross-appeals the district court's denial of judgment as a matter of law on the breach of contract claim and argues, in the alternative, for a reduction of damages.[3] We exercise jurisdiction pursuant to 28 U.S.C. § 1291 (1994).

<u>DISCUSSION</u>

A. Standards of Review

We review a grant of summary judgment *de novo*, applying the same criteria as the district court. See Merritt-Campbell, Inc. v. RxP Products, Inc., 164 F.3d 957, 961 (5th Cir.1999). Summary judgment is appropriate if "there is no genuine issue as to any material factand . . . t he moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The moving party must first demonstrate that there are no genuine issues of material fact. See 477 U.S. at 248. Once the moving party makes this showing, the nonmovant must come forward with summary judgment evidence sufficient to establish

---

[3]In what may justly be considered a blues classic, Freddie King described one possible resolution of a strictly legal matter:

> The cops took her in/
> That woman didn't need no bail.
>
> She wiggled one time for the judge/
> And the judge put the cops in jail.

FREDDY KING, *You've Got to Love Her With a Feeling*, on HIDE AWAY, *supra* note 1.

the existence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992) ("The nonmovant must come forward with evidence establishing each of the challenged elements of its case for which the nonmovant will bear the burden of proof at trial.").

This court reviews a judgment as a matter of law *de novo*. See Ensley v. Cody Resources, Inc., 171 F.3d 315, 319 n.4 (5th Cir. 1999); Burch v. Coca-Cola, 119 F.3d 305, 313 (5th Cir. 1997). Judgment as a matter of law is proper only where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." FED.R.CIV.P. 50(a)(1). We review the record in the light most favorable to the party opposing the motion. See Burch, 119 F.3d at 313.

Finally, we review the district court's adjudication of a subsequent motion to alter or amend judgment pursuant to FED. R. CIV. P. 59(e) for abuse of discretion. See Edward H. Bohlin Co., Inc. v. Banning Co., Inc., 6 F.3d 350, 353 (5th Cir. 1993).

B. Lanham Act and Unfair Competition

The Lanham Act imposes liability on

[a]ny person who, in connection with any goods . . . uses in commerce any word, term, name . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person[.]

15 U.S.C. § 1125(a)(1)(A) (1994). Persons bringing an action pursuant to this provision must demonstrate that (1) the defendants made false statements of fact about recordings; (2) those statements deceived, or had the potential to deceive, a substantial segment of potential customers; (3) the deception was material, in that it tended to influence purchasing decisions; (4) the defendants caused their products to enter interstate commerce; and (5) the claimant has been or is likely to be

injured as a result.  See Taquino v. Teledyne Monarch Rubber, 893 F.2d 1488, 1500 (5th Cir. 1990).

"Likelihood of confusion" is the essential element in both King's  Lanham Act claim and her common law claim for unfair competition.  As a result, our adjudication and analysis of the Lanham Act claim applies to King's unfair competition claim and we dispose of the two in tandem.

King argues that Ames made false statements on the back of the compact discs in question. King contends that the masters are of live recordings, yet Ames has listed himself as the "producer" of the recordings.  King contends that, as there is no "producer" of a live recording, this statement was both false and likely to cause confusion among the record-buying public.  On appeal, she argues that the "likelihood of confusion" issue does not lend itself to disposition on summary judgment.  See Society of Financial Examiners v. National Association of Certified Fraud Examiners, Inc. ("SOFE"), 41 F.3d 223, 225  (5th Cir. 1995) (holding that the likelihood of confusion in use of acronym, "CFE," to specify certification within two different and unrelated organizations was a question of fact); Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 258 (5th Cir. 1980) (recognizing that likelihood of confusion is a question of fact).  King further argues, in the alternative, that even if the district court properly reached the issue, it erred as a matter of law.

The district court held that King had failed to offer any evidence that this alleged deception affected a substantial segment of potential purchasers of Freddie King recordings, that it influenced purchasing decisions or otherwise injured her.  Additionally, the district court explained that the liner notes to the recordings at issue specifically acknowledge that the recordings are of a live Freddie King performance.  According to the district court, the absence of an "actual" producer, who has suffered as a result of this misattribution of production credit, prevents a finding of injury.  Moreover, King's failure to produce evidence bearing upon the issue of injury similarly prevents such a finding.

We agree with the district court and find this court's decision in Matrix Essentials, Inc. v.

Emporium Drug Mart, 988 F.2d 587 (5th Cir. 1993) instructive. In Matrix, a hair care product manufacturer sought to ensure that its products were only sold in salons, and claimed that products sold were not genuine unless the sale was accompanied by a consultation with a hair care professional. See id. at 589. The court held that to show likelihood of confusion, the plaintiff must show a defect in the product itself, not with the manner in which it was sold. See id. at 593. The Matrix court affirmed the granting of summary judgment on the issue of likelihood of confusion. See id. Consequently, we reject King's argument that the issue of confusion may not be resolved on summary judgment, notwithstanding certain of our cases that suggest to the contrary.

King's reliance on SOFE and Amstar is mistaken. SOFE concerned the use of the trademark "CFE" in certifying persons for two different professions, financial examiners and fraud examiners. The plaintiff obtained a service registration for "CFE" four years after the defendant had begun using the same acronym. The court found that "[o]n this record, a trier-of-fact would be entitled to decide that 'CFE' was generic or to adjudge the likelihood of confusion far-fetched." SOFE, 41 F.3d at 226. Similarly, in Amstar, this court was confronted with the use of virtually identical marks for food products. See Amstar, 615 F.2d at 257. Again, this court was compelled to find summary disposition inappropriate. See id. at 258. Here, we are not confronted with either nearly identical marks or a similar acronym. Additionally, the record before us does not dictate the same result because it is devoid of evidence or facts that would permit a reasonable jury to find that consumers were deceived by the alleged misattribution of the production credit.

Furthermore, we find that the record is similarly devoid of any facts bearing upon the issue of injury. Like the district court before us, we cannot find any evidence to show that King, any

producer, or any other person was injured by the alleged misattribution.[4]  Accordingly, we affirm the district court's grant of summary judgment on the Lanham Act and unfair competition claims.

C.  Negligence

King propounds that Ames did not act as a reasonably prudent record producer when he failed to exercise proper care in ascertaining the scope of his rights to the recordings and in accounting for the royalties owed to  King.  The district court granted summary judgment for Ames on this issue after it found that the negligence claim was based on Ames's failure to remain within the scope and terms of the 1993 agreement.  Accordingly, the district court found that the only duty Ames may have breached was created by  contract.  On appeal, we must likewise determine whether King's negligence claim is one sounding in tort or in contract.

Again, we agree with the district court.  Ames did not owe King a duty to act as a reasonably prudent record producer until he entered into the licensing agreement with King.  His duty, therefore, was created solely by contract, and King's recovery in that regard is limited to her action for breach of contract.  Applying state law, we turn to the Texas Supreme Court's decision in Southwestern Bell Telephone Co. v. DeLanney, 809 S.W.2d 493 (Tex. 1991).  In DeLanney, the Texas Supreme Court held that, to recover in tort, a plaintiff must demonstrate liability independent of the fact that a contract exists between the parties.  See id. at 494.  As the only liability in the case at bar arises from the contract itself, there can be no tort liability and the negligence claim must fail.[5]

---

[4]King complains that she could not present evidence bearing upon the issue of injury because she had not received an accounting.  Certain remedies were available to her in order to secure this information including use of Federal Rule of Civil Procedure 56, yet King did not avail herself of such remedies.  Even though we construe the facts in the light most favorable to King, we are not required to create evidence where none exists.

[5]See also W. PAGE KEETON ET AL.,  PROSSER AND KEETON ON THE LAW OF TORTS § 92 at 656, 657 (5th ed. 1984) ("[R]ecovery of intangible economic losses is normally determined by contract law.").  We reject King's reliance on Kimbrough v. Coca-Cola/USA, 521 S.W.2d 719 (Tex. Civ.

D. Copyright Infringement

The district court granted judgment as a matter of law for Ames on King's claim of copyright infringement in violation of the Copyright Act. The district court found that while there was sufficient evidence for a jury to believe that King owned the copyright, there was no evidence of copying.

As we explained in Engineering Dynamics, Inc. v. Structural Software, Inc., 26 F.3d 1335 (5th Cir. 1994), as a factual matter, copying usually may be inferred from proof of access to the copyrighted work and probative similarity. See id. at 1340-41. Yet not all copying is legally actionable as a copyright infringement. See id. The party bringing the copyright claim must prove substantial similarity. See id. Consequently, we must determine whether King produced sufficient evidence of substantial similarity between the works copyrighted and the works in question in order to permit a reasonable jury to find in her favor.

We agree with the district court that she did not. Our decision in Creations Unlimited v. McCain, 112 F.3d 814 (5th Cir. 1997), is controlling. To determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to assess whether the two works are substantially similar. See id. at 816. While a determination of substantial similarity should typically be left to the fact-finder, the Creations Unlimited decision contemplates that a fact-finder will have the opportunity to view the two works side-by-side. Indeed, as our sister circuit has found, copying is an issue to be determined by comparison of works, not credibility. See Folio Impressions, Inc. v. Byers California, 937 F.2d 759, 766 (2nd Cir. 1991).

App.1975, writ ref'd n.r.e.). In Kimbrough, the court recognized that a party may bring an action for the unauthorized appropriation or exploitation of his name or likeness. See id. at 722. Unlike the case before us, the Kimbrough court was not confronted with an express written contract between the parties. We find Kimbrough more instructive in those instances where the parties have not entered into a formal agreement.

King's failure to adduce evidence for such a comparison vitiates her claim.

Notwithstanding King's arguments to the contrary, judgment as a matter of law was appropriate on this issue.

E.  Misappropriation

The defendants moved for summary judgment on King's claim of misappropriation of Freddie King's name and likeness.  The district court denied the motion.  At trial, the jury found for King and awarded $27,000.00 in damages.  Nevertheless, the district court granted the defendants' motion for judgment as a matter of law.  The district court found that King did not adduce competent evidence at trial to support any recovery on this claim.

In general, "an owner is competent to give his opinion on the value of his property." Kestenbaum v. Falstaff Brewing Corporation, 514 F.2d 690, 698-99 (5th Cir. 1975).  However, such testimony cannot be based on naked conjecture or solely speculative factors.  Cf. Dietz v. Consolidated Oil & Gas, Inc., 643 F.2d 1088, 1094 (5th Cir. 1981) (approving owner's testimony on the value of his crops given his personal knowledge and articulated basis for determining value).

King sought to establish the value of damages resulting from Ames's misappropriation.  Early in her testimony, King explained that she had informally conducted business on behalf of the heirs of Freddie King and the Freddie King estate for over ten years.[6]  King testified that she was familiar with

---

[6]Perhaps King's work ethic in managing the affairs of her father's estate is derived from her father's experiences:

> She wakes me in the morn'in/
> Before the break of day/
> Telling me to get up and go out/
> And earn myself some pay.

FREDDY KING, *I Love the Woman*, on HIDE AWAY, *supra* note 1.

the commercial value of her father's name and likeness because of her prior involvement in negotiations to market that name and likeness on T-shirts. Nothing in the record appears to rebut this testimony.[7] Based on this experience, she determined that Ames's misappropriation amounted to $25,000.00 in damages. The jury awarded King $27,000.00 in damages. Nevertheless, the district court dismissed Wanda King's testimony because (1) it was based on "unrelated transactions" and (2) King failed to offer any "factual basis" for the amount claimed.

There is no specific formula King could have used in the alternative to show the value of an intangible property interest such as name and likeness. See Zim v. W. Publ'g Co., 573 F.2d 1318, 1327 n.19 (5th Cir. 1978). A Freddie King T-shirt, unlike a recording, would sell almost solely according to the value of Freddie King's name and likeness in addition to the minimal value of the T-shirt itself. Because the image was her father's and she had engaged in some limited transactions involving the marketing of her father's name and likeness, we cannot say that King's testimony was based on naked conjecture and speculation. As noted by the district court, like "goodwill" in a business, one's name and likeness is an intangible property interest which is not susceptible of proof with mathematical exactitude. See Zim, 573 F.2d at 1327 n. 19. Considering the evidence in the light most favorable to the jury's verdict and the intangible nature of the property interest, we find the testimony of Wanda King sufficient. Accordingly, we reverse the district court on this issue.

F. Breach of Contract

The jury found for King on the breach of contract claim and awarded $11,375.00 in damages.

_____

[7]On the issue of King's experience in negotiating different transactions, the cross-examination challenges the methodology by which King determined the amount in damages. However, the cross-examination falls short insofar as it does not rebut the values assigned to the sale of T-shirts.

Ames appeals the district court's denial of its subsequent motion to alter or amend judgment pursuant to FED. R. CIV. P. 59(e). Again, we review for abuse of discretion. See Edward H. Bohlin Co., Inc., 6 F.3d at 350.

Notwithstanding Ames's arguments to the contrary, we cannot find that the district court abused its discretion in denying Ames's motion to alter or amend judgment.[8] Based on the volume of evidence presented at trial, the reasonable inferences which may be drawn from the evidence, and the high standard for overturning a jury's verdict and damages award, the jury's award of $11,375.00 must stand.

CONCLUSION

For the reasons ascribed, we AFFIRM in part, and REVERSE in part.

---

[8]In the alternative, Ames requests a remittitur. We may grant a remittitur if the award of damages is excessive, and a new trial on damages alone if the plaintiff declines the remitted award. See Eiland v. Westinghouse Electric Corporation, 58 F.3d 176, 182 (5th Cir. 1995). While there is a strong presumption in favor of affirming jury awards of damages, a damage award may be overturned upon a clear showing of excessiveness or upon a showing that the jury was influenced by passion or prejudice. See id. (citing Westbrook v. General Tire and Rubber Co., 754 F.2d 1233, 1241 (5th Cir. 1985)). Like the decision to alter or amend judgment, the trial court's decision to grant or deny a remittitur rests within the sound discretion of the trial judge. See id. We review for abuse of discretion and find none in the case at bar.